EXHIBIT A

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

| | |
|---|---|
| **Tracy Cain,**     *Complainant*,<br><br>          *v.*<br><br>**Secretary,**<br>**Department of Veterans Affairs**<br><br>          *Agency.* | VA Case No.  200H-0670-2019103790 |

# FINAL AGENCY DECISION

## INTRODUCTION

In a formal EEO complaint filed August 28, 2019, Complainant alleged that officials at the Syracuse Veterans Affairs Medical Center (VAMC) in Syracuse, New York, discriminated against her as referenced below. The Department's Office of Resolution Management, Diversity and Inclusion (ORMDI) investigated the complaint in accordance with Equal Employment Opportunity Commission regulation 29 C.F.R. Section 1614.108.

At the conclusion of the investigation, the Department notified Complainant in writing of the right to request either a hearing and decision by an EEOC administrative judge, with a subsequent final action by the Department, or an immediate final decision by the Department without a hearing.  Complainant failed to respond to that notice.  Thus, the complaint file was forwarded to the Department's Office of Employment Discrimination Complaint Adjudication (OEDCA) for an immediate final agency decision based on the investigative record.  OEDCA received the file from ORMDI on June 12, 2020.

## CLAIM

Whether Complainant was subjected to sexual harassment based on her sex (female) from October 2018 through May 2019.

**SUMMARY OF FACTS**

Complainant was a Police Officer at the Syracuse VAMC at the time relevant to this complaint. Complainant testified that she was subjected to sexual harassment by her male coworker CW1[1] when he engaged in unwelcome sexual conduct via text messages and in-person, sent her unsolicited nude photos of himself, insisted that he had a "friends with benefits" situation with Complainant, and falsely reported to the Chief of Police that Complainant was negligent in her duties after she rejected his sexual advances. Complainant testified that she reported the sexual harassment to her supervisor, the Lieutenant of Police Services (S1), on May 5, 2019, and that CW1 was ordered to stay away from her. Complainant testified that CW1 subsequently came to her work area twice during the week of May 13, 2019. (Report of Investigation (ROI), Tan 7-1; 7-11.)

Complainant testified that around September 25, 2017, shortly after she began working at the Syracuse VAMC, she and CW1 began texting about work-related issues. Complainant testified that on October 10, 2018, CW1 sent her a text stating he was "relaxing in his birthday suit" while deciding what to make for dinner. Complainant testified that was too much information for her and it made her stomach turn and she replied with the shocked face emoji (hands over the mouth). She testified that she then texted a laughing, crying emoji in an attempt to keep her relationship with CW1 lighthearted, thinking he was making a crass joke. (ROI, Tab 7-1.)

The evidence of record establishes that CW1 engaged in the following conduct toward Complainant between October 10, 2018 and May 5, 2019: (1) comments about her perfume and the size of her breasts; (2) pinching and pulling on her sweater; (3) telling her that he would play hooky from work and come to her house; (4) sending her texts with graphic sexual language and unsolicited nude photos, and (5) asking her for nude photos which she did not send. Complainant testified that she deflected CW1's advances because she did not want to "rock the boat" and was fearful that if she did not "play along," CW1 would attempt to make her look bad and cause her to be ostracized. (ROI, Tab 7-1.)

The evidence of record establishes that, on May 2, 2019, CW1 served in S1's position, and as Complainant's supervisor, for the day. The evidence establishes that, during the morning of May 2, 2019, CW1 verbally made a comment to Complainant about "collecting" on the "friends with benefits" situation between them. Complainant testified that, in response, she told CW1 that she would not be his "friend with benefits" and that she was dating another individual. Complainant testified that CW1 then became cold and abrupt toward her for the remainder of the day. (ROI, Tab 7-1.)

Complainant testified that when she arrived at work on May 3, 2019, S1 showed her an email from CW1 to Complainant's third-level supervisor, the Chief of Police (S3), stating that there were several instances on May 2, 2019, when Complainant had not done her job, failed to follow through, and was negligent. Complainant testified that S1 investigated all of CW1's allegations and found them to be untrue. (ROI, Tab 7-1.)

---

[1] CW1 was a Lieutenant, which is a higher rank than Complainant, and worked in a supervisory capacity in the police department but was not in Complainant's direct supervisory chain-of-command.

2

The evidence of record establishes that Complainant informed S1 of CW1's sexual conduct toward her on May 5, 2019. (ROI, Tabs 7-1; 7-2.)

S1 testified that she reported Complainant's allegations to S3 immediately.  Complainant testified that management changed her schedule back to 12-hour shifts with her own squad to remove her from CW1's presence.  Complainant testified that on May 8, 2019, S3 informed her that an investigation was ordered into her allegations against CW1, that CW1 was assigned to the Pass and ID Office, and that CW1 was ordered to stay away from the Police Office and Complainant.  Record evidence confirms that CW1 was provided with written notification that he was being placed in restricted duty status effective May 7, 2019, pending an investigation into an allegation that he had engaged in sexual harassment against Complainant. (ROI, Tabs 7-1; 7-7; 7-11; 7-12.)

The evidence of record establishes that CW1 came into Complainant's work area twice during the week of May 13, 2019.  S1 testified that once CW1 entered Complainant's work area to speak with an investigator and once CW1 entered Complainant's work area to go to his locker. (ROI, Tabs 7-1; 7-2.)

Complainant testified that on July 10, 2019, she met with S1 and S3 who advised her that, although Human Resources (HR) recommended that CW1 be terminated, the Interim Facility Director overrode the decision because he felt CW1 had been "punished enough". Subsequently, CW1 returned to work and was demoted from Lieutenant to Officer, effective July 11, 2019. (ROI, Tabs 7-1; 7-13; 7-14; 7-22.)

Complainant testified that when she was working at the Behavioral Health Outpatient Clinic (BHOC) on July 10, 2019, CW1 came for an appointment and sat outside the police office where she was working after he checked in for his appointment.  Complainant testified that CW1 worked on her shift at the BHOC in late-July 2019, on August 7, 2019, and on August 16, 2019. Complainant testified that she reported the issue to S1 and that S1 informed her that the BHOC squad was short-handed and CW1 was working the available overtime. (ROI, Tab 7-1.)

## ANALYSIS

### 1. Statement of Applicable Law

The law prohibiting discrimination based on sex is Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. ("Title VII").  Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

*Sexual Harassment*

Sexual harassment is defined by EEOC's regulations published in 29 C.F.R. Section 1604.11. The regulations state in pertinent part:

(a) Harassment on the basis of sex is a violation of section 703 of Title VII.  Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature

3

constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or, (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

In order to establish a prima facie case of hostile environment sexual harassment, a complainant must present evidence: (1) that she belongs to a protected class; (2) that she was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) that the harassment complained of was based on sex; and (4) that the harassment was sufficiently severe or pervasive to affect a term or condition of employment, and/or that the harassment had the purpose or effect of unreasonably interfering with her work performance and/or of creating an intimidating, hostile, or offensive work environment. McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990); Sexton v. U. S. Marine Corps, EEOC Appeal No. 01821475 (August 30, 1983); Cudjoe v. Secretary of the Navy, EEOC Appeal No. 01880743 (June 14, 1988).  In cases of sexual harassment by coworkers or other non-supervisors, the complainant must also show as part of the prima facie case that management failed to take prompt and appropriate action although it was aware of the harassment.  Lutticken v. Secretary of Health and Human Services, EEOC Request No. 05900386 (April 27, 1990).

A prima facie case of hostile environment sexual harassment may be rebutted by the production of evidence to show that: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; and/or (3) the alleged harassment was not sufficiently severe or pervasive to adversely affect the complainant's employment opportunities, to unreasonably interfere with the complainant's performance, or to create an abusive working environment.  McGinnis, EEOC Appeal No. 01902760; Quinn v. Postmaster General, EEOC Request No. 05900546 (August 23, 1990); Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993).

Even where harassment has occurred, management may avoid Title VII liability for the harassment by a coworker by showing that: (1) management took prompt, effective, and appropriate remedial action as soon as it became aware of the circumstances (a defense which applies only to sexual harassment by coworkers or other non-supervisors); and/or (2) there is no basis under agency principles for imputing liability to the employer.  McGinnis, EEOC Appeal No. 01902760; Quinn v. Postmaster General, EEOC Request No. 05900546 (August 23, 1990); Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993).

Under agency principles, management is liable for sexual harassment by a supervisor with immediate or successively higher authority over a victimized employee.  The supervisor must have the power to make a significant change in the employee's employment status, such as through hiring, firing, failing to promote, reassignment with significantly different responsibilities or causing a significant change in benefits.  See, Vance v. Ball State University, 570 U.S. 421 (2013).  However, where no tangible employment action has been taken by the supervisor, management may avoid liability by showing: (1) that management exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the complainant unreasonably failed to take advantage of any preventative or corrective opportunities provided by management or to avoid harm otherwise.  Management bears the burden of proof on this affirmative defense.

4

Management may not avoid liability when the supervisor's harassment culminates in a tangible employment action. A "tangible" employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, demotion, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

## 2. Discussion

*Sexual Harassment*

Complainant belongs to a protected class under Title VII due to her sex. Complainant was subjected to unwelcome[2] conduct of a sexual nature by CW1, and CW1's conduct was specifically based on Complainant's sex. The sexual conduct was frequent, graphic, aggressive, and included unsolicited pornographic photos and, at times, physical touching. The sexual harassment also included an instance in which CW1 falsely reported to S3 that Complainant had not adequately performed her duties after she rebuffed his sexual advances on May 2, 2019. Based on the entirety of evidence in the record, we find that Complainant has shown that she was subjected to sexual harassment which created a hostile work environment by CW1 as claimed.

*Agency Liability*

Even where harassment has occurred, management may avoid Title VII liability for the harassment by a coworker by showing that: (1) management took prompt, effective, and appropriate remedial action as soon as it became aware of the circumstances (a defense which applies only to sexual harassment by coworkers or other non-supervisors); and/or (2) there is no basis under agency principles for imputing liability to the employer. McGinnis, EEOC Appeal No. 01902760.

In this case, management did not take prompt effective action to stop the harassment or prevent its recurrence. S1 and S3 took prompt action in ordering an administrative investigation and reassigning CW1 during the investigation. However, CW1 circumvented the orders to stay away from Complainant and visited her work area twice within a week of being ordered to stay away. Moreover, after the administrative investigation was conducted, Complainant was placed back into a police position by the Interim Facility Director and permitted to work overtime on Complainant's shifts at the BHOC even though HR had recommended terminating Complainant due to his sexual conduct toward Complainant.

We find the Agency did not take effective action to stop the harassment and prevent its recurrence. When harasser is permitted to approach the victim or visit the victim's work area.

---

[2] CW1 opted, as a former agency employee, to not participate in the investigation. CW1 testified during the administrative investigation conducted by HR into Complainant's allegations of sexual harassment in May 2019, that he did not believe his sexual conduct was unwelcome by Complainant. However, the evidence of record, including evidence of Complainant attempting to discourage CW1's sexual conduct and no evidence of Complainant engaging in sexual conduct herself, establishes that the sexual conduct was one-sided; pursued by CW1 and directed at Complainant. No evidence establishes that Complainant welcomed CW1's sexual conduct. (ROI, Tab 7-8.)

5

Rusty C., v. Department of Veterans Affairs, EEOC Appeal No. 2019005662 (September 30, 2020) (The Commission found that the Agency failed to take effective action to stop coworker harassment when the harassing coworker was permitted to "circle back" to the victim's work area to "surprise and intimidate" Complainant).

In this case, Complainant's harasser, CW1, was free to enter Complainant's work area even though management was aware of his harassing conduct because S1 and S3 failed to take effective action to prevent him from accessing Complainant during the investigation and the Interim Facility Director failed to remove him from his position as advised by HR following the investigation.  The Agency's failure to prevent CW1 from continuing to access Complainant made the Agency liable for the coworker harassment in this case.

Based on the entirety of evidence in the record, we find that Complainant proved that she was subjected to sexual harassment for which the Agency is liable.

## CONCLUSION

Complainant proved that she was subjected to sexual harassment as claimed.

## REMEDIAL RELIEF

In view of the above finding of discrimination we order the following relief and corrective action.

**1.  EQUITABLE RELIEF**

Complainant is entitled to full, make-whole relief pursuant to 29 C.F.R. Section 1614.501(a).  To make Complainant whole, the Agency must restore her "to a position where she would have been were it not for the unlawful discrimination." Franks v. Bowman Transportation Co., 424 U.S. 747 (1976); Albermarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975).

**Written Commitment**

Within 30 days of the date of this decision, pursuant to 29 C.F.R. Section 1614.501(a)(5), the Agency will commit to Complainant in writing that it will cease from engaging in the unlawful employment practice found in this case, namely, sexual harassment, that it will not engage in similar unlawful employment practices, that it will provide Complainant a work place free from hostility, offensive conduct or abuse, and that no reprisal will be taken against Complainant for filing and pursuing this or any other complaint under Federal EEO law.

**Leave Restoration**

Within 30 days of the date of this decision, the Agency shall restore any leave (annual, sick, or leave without pay) taken as a result of the discriminatory action.  Complainant is required to assist management by providing any information reasonably requested by management as necessary to implement the relief. The Agency  shall provide Complainant with a written explanation as to the amount and type of leave restored.

## 2. COMPENSATORY DAMAGES

The Department is liable for losses caused by the discrimination that occurred in this case. However, there is insufficient evidence in the record from which to determine whether, or to what extent, Complainant has incurred pecuniary or non-pecuniary losses due to the discrimination. Accordingly, we defer a decision on the specific amount of damages to be awarded pending receipt of a supplemental investigation report on the issue of damages.

Briefly, Complainant must provide <u>verifiable</u>, <u>objective</u> evidence that (1) she incurred damages <u>and</u> (2) that the damages resulted from the discrimination. A mere statement that Complainant deserves compensation for embarrassment, humiliation, lack of sleep, emotional distress, anxiety, etc., without supporting evidence, is not sufficient. Compensatory damage claims must be accompanied by evidence of both the injury or loss that was incurred <u>and</u> the connection between the injury or loss and the discriminatory conduct.

Compensatory damages may be claimed for past pecuniary losses, future pecuniary losses, and non-pecuniary losses. *Past pecuniary losses* are monetary or out-of-pocket expenses, such as medical, moving, or job search expenses, which Complainant has already incurred as a result of the discriminatory conduct. Evidence of such damages must establish two elements. First, the amount of the damages must be established through objective evidence such as bills, receipts, or canceled checks. Second, the evidence must establish the causal relationship between the discriminatory conduct and the alleged damages.

*Future pecuniary losses* are out-of-pocket expenses, such as medical care or counseling, which will be incurred in the future because of the discriminatory conduct. Evidence of such damages usually requires expert testimony and must establish three elements: (1) the likelihood of future expenses; (2) the approximate amount of future expenses; and (3) the causal relationship between the discriminatory conduct and the future expenses. *Non-pecuniary losses* are non-monetary harms or injuries, which are impossible to quantify exactly, such as pain and suffering, or loss of enjoyment of life. Evidence of non-pecuniary losses must show the nature, duration, severity, and cause of the claimed injury.

In accordance with guidance set forth in <u>Broughton v. Department of the Navy</u>, EEOC Appeal No. 01951999 (April 25, 1995), Complainant is further advised as follows concerning claims of compensatory damages.

1. Complainant should submit objective evidence such as statements concerning emotional pain or suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses that Complainant believes were incurred as a result of the discriminatory conduct. Such statements shall include a statement from Complainant describing and itemizing <u>in specific detail</u> the claimed damages.

2. Complainant may submit statements from credible witnesses, including family members, friends, health care providers, and other counselors (including clergy) describing the damages incurred and the types of treatments and/or medications prescribed. Such statements may

7

address, for example, the outward manifestations or physical consequences of emotional distress, including anxiety, sleeplessness, stress, depression, marital strain, fatigue, or a nervous breakdown.  In order for these statements to be acceptable as evidence, these witnesses must indicate that (a) <u>their statements are based on personal knowledge obtained through their own observations</u>, (b) must include <u>specific</u>, <u>detailed</u> information on the <u>physical and/or behavioral manifestations</u> of the pain, distress, anguish, etc.; (c) must include <u>information on the duration</u> of the distress or anguish (i.e., when did they first notice these manifestations and how long did these manifestations last; (d) must include specific <u>examples</u> of how the distress, anguish, etc., affected Complainant day to day, both on and off the job; and (e) must indicate the types of medication and/or treatment prescribed, if applicable.

3.  Objective evidence also may include proof of Complainant's actual out-of-pocket expenses (bills, receipts, etc.) related to medical treatment, counseling, medications, and so forth, that are directly related to or caused by the discrimination. If reimbursement is claimed for other types of losses or expenses, Complainant must provide credible evidence, such as bills, receipts, canceled checks or other verifiable evidence indicating the exact nature and date(s) of the loss and/or expense.

4.  Complainant must establish a connection between the discriminatory action and the alleged resulting non-pecuniary harm or injury.  Hence, any evidence of medical expenses should include medical documentation such as statements from medical or other health care professionals who have treated the loss or injury claimed.  If the medical condition existed prior to the discrimination, Complainant must submit medical or other credible evidence indicating whether or not the condition worsened as a result of the discrimination, the length of time Complainant had the condition prior to the discrimination, the type of medical treatment Complainant received for the condition, and who provided the treatment.  Evidence regarding other types of losses or expenses must also indicate (a) the exact nature of the loss or expense, (b) the date(s) of the loss, and (c) any other information that proves that the loss or expense occurred as a result of the alleged discrimination.

5.  A request for compensatory damages may require Complainant to disclose personal and sensitive information to the agency to enable the agency to determine whether the claimed harm or injury is linked in whole or in part to the discriminatory conduct.

This office has requested that the Department's Office of Resolution Management, Diversity and Inclusion (ORMDI) conduct a supplemental investigation in order to obtain any additional information needed to reach a just and proper determination of the amount of damages to be awarded.  Upon receipt of this decision, Complainant shall have <u>forty-five (**45**) days</u> in which to provide <u>the ORMDI investigator</u> with any and all objective evidence, as described in the preceding paragraphs, pertinent to compensatory damages.  The ORMDI investigator will contact Complainant to obtain this evidence.  Thereafter, based on the record, the evidence provided by Complainant, and any additional evidence gathered in the supplemental investigation, this office will issue a final agency decision on damages.  The decision will advise Complainant of the right to appeal the decision to the EEOC and the right to file a civil action.

If Complainant wishes to negotiate a settlement of the damages award with the facility director or staff office head, rather than having this office decide it, Complainant should simultaneously submit the above requested information regarding damages both to the ORMDI investigator <u>and</u> the facility Director or staff office head, or that official's legal representative. Any such agreement must be reached <u>prior</u> to the issuance of a final agency decision by this office. The Department will not delay investigation and issuance of a decision on damages because of settlement negotiations unless Complainant requests an extension of time in writing.

### 3.  ATTORNEY FEES & COSTS

As a prevailing party, Complainant, who, according to the record, has been represented by an attorney in this case, is entitled to claim attorney fees and costs, subject to the provisions of EEOC's regulations codified at 29 C.F.R. §1614.501(e)(2).

Any claim for fees must include a verified statement from the attorney of costs and attorney's fees. The statement must be accompanied by an affidavit from the attorney itemizing the charges for legal services. Specifically, the affidavit should chronologically detail the dates on which services were rendered, the person providing such services, the nature and extent of the services performed, and the number of hours expended. This affidavit is only a reconstruction of the services provided and does not, in itself, justify an award of attorney's fees. To be compensable, such services must be documented by contemporaneous billing records prepared the same day on which the services were actually provided. Consequently, copies of the applicable billing records must accompany both the affidavit and verified statement.

In addition to the above information, the affidavit must contain a statement as to the attorney's usual and customary hourly charge, as well as the usual and customary hourly charge for each person who worked on this case. It should, to the extent applicable, explain any distinction between in court and out of court fees, whether the fee was fixed or contingent, the nature and length of the professional relationship with this complainant, and any other factors which might affect the amount of attorney's fees in this case. The affidavit must describe the training and experience of each person who worked on this case, and the date of bar membership as applicable.

The claim should also include affidavits from other attorneys attesting to the prevailing market rate in the relevant geographic area for similar services, and any evidence regarding hourly rates that have been awarded in prior cases. It is the attorney's responsibility to prove the reasonableness of the requested hourly rate. The claim for fees <u>must</u> include a copy of the fee agreement between counsel and Complainant.

Except as noted below, EEOC's regulations permit payment of an attorney fee award only for services performed <u>after the filing of the formal, written complaint</u>, <u>and</u> <u>after notification to the agency that Complainant is represented by an attorney</u>. However, the regulations do permit compensation for services rendered prior to such notification for a reasonable amount of time spent deciding whether to represent Complainant.

Any claim for fees must be submitted <u>to this office at OEDCAElectronicFADRequest@va.gov</u> **and** to the Director, Syracuse New York Veterans Affairs Medical Center, within **60 days** of receipt of this decision. The submission to this office must indicate that a copy of the claim was

9

served on that official or legal representative.  This office will issue a final fee decision within 60 days of receipt of the claim, <u>provided</u> a copy of the claim has been served on the above official.  The final fees decision will include notice of the right to appeal the decision respecting the amount of the attorney fee award.

If Complainant wishes to negotiate a settlement of the attorney's fee award <u>with the Syracuse New York</u> VAMC rather than having this office decide it, such an agreement must be reached <u>prior</u> to the issuance of a final agency decision by this office.  This office will not delay issuance of a decision on attorney's fees because of settlement negotiations unless Complainant's attorney files a written request for an extension of time with this office.

## 4.  OTHER CORRECTIVE ACTION

In addition to making Complainant whole, a remedy must be tailored to correct the particular source of the identified discrimination and to minimize the chance of its recurrence.  Therefore, pursuant to 29 C.F.R. Section 1614.501(a)(2), the Agency will take whatever corrective, curative, and preventive actions and will adopt whatever measures are necessary to ensure that violations of Federal EEO law similar to those found in this case do not recur.

### EEO Training

The Agency will provide 4 hours of EEO training on sexual harassment under Title VII, with an emphasis on identifying conduct that constitutes sexual harassment and on management's responsibility to take prompt, effective action to end harassment and prevent its recurrence to: Lieutenant Robin Lawrence and Chief Lauren Seburn of the Syracuse VAMC Police Office, and Richard Salgueiro, the Interim Syracuse Facility Director at the time of the complaint (currently the Director of the VA Western Colorado Health Care System in Grand Junction, Colorado).

The training shall be mandatory, conducted by an Office of Resolution Management, Diversity and Inclusion (ORMDI) subject matter expert, and completed within 120 days of the issuance of this Final Agency Decision.  If an ORMDI trainer is unavailable, ORMDI will provide the training content, and the trainer identified by the facility must be certified by ORMDI as an EEO subject matter expert.

According to the evidence of record, the individual responsible for the harassment, Police Officer Paul White, no longer works for the Agency.  If he is rehired, he must receive the training identified above.

### Disciplinary Action

The Agency must consider taking appropriate disciplinary action against the responsible management officials identified above.  ORMDI will provide follow-up with agency officials responsible for taking disciplinary action in this case.  The follow-up will include direction on the timeline for making disciplinary determinations and how they must be documented.  In the event that no disciplinary action is taken, management must provide ORMDI with a written explanation for this decision.

**Training is <u>not</u> considered disciplinary action.**

**<u>Notice Posting</u>**

The Agency is ORDERED to post at the Syracuse VAMC in Syracuse, New York, copies of the attached Notice to Employees (Notice) regarding unlawful discrimination in violation of Title VII. The Agency shall post copies of the Notice, both in hard copy and electronic format, after being signed by the Director of the above-named facility within 30 calendar days of receipt of this Order.

The Notice shall remain posted for **60 consecutive days** in conspicuous places, including the facility intranet website and those places where notices to employees are customarily posted. The Agency shall take reasonable steps to ensure that copies of the Notice are not altered, defaced, or covered by any other material.

## RIGHT OF APPEAL

Within 30 days of receipt of this final decision, Complainant has the right to appeal it to: **Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013.** If an appeal is filed, EEOC Form 573 should be used. A copy of EEOC Form 573 is attached.

A copy of the appeal to the EEOC **must** also be sent to the VA Office of General Counsel at the following address: **Department of Veterans Affairs, Office of the General Counsel (024), 810 Vermont Ave., N.W., Washington, D.C. 20420**.

Statements or briefs in support of the appeal **must** be submitted to the EEOC within 30 calendar days of the filing of the appeal. <u>A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement", must also be sent to the VA's Office of General Counsel at the above address</u>.

If an appeal is filed with the EEOC, the appeal, and any subsequently filed statement or brief, **must** contain a statement certifying the date and method by which copies of these documents were served on the VA's Office of General Counsel.

If Complainant files an appeal with the Commission beyond the above-noted time limit, Complainant should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If Complainant cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Complainant also has the right to file a civil action in an appropriate United States District Court. Complainant may file a civil action:

within 90 days of receipt of this final decision <u>if no appeal to EEOC has been filed</u>; or

within 90 days after receipt of the EEOC's final decision on appeal; or

after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

Complainant **must** name the person who is the official head of the Department of Veterans Affairs as the defendant. Department means the national organization, and not just the local office, facility, or unit in which Complainant works. Complainant may not name just the Department. Complainant must name **Denis McDonough** as the defendant. Complainant must also state the official title of the Department head. The official title of the head of the Department of Veterans Affairs is **Secretary of Veterans Affairs**. Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

If Complainant decides to file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal) or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if Complainant does not have or cannot afford the services of an attorney, Complainant may request that the Court appoint an attorney to represent Complainant and that the Court permit Complainant to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court**. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date Complainant receives the final decision from the Department or the Commission.

_____    _____
MAXANNE R. WITKIN                                            Date
Director, Office of
Employment Discrimination
Complaint Adjudication

Attachment: EEOC Form 573

## NOTICE TO EMPLOYEES

This Notice is posted pursuant to a recent Final Agency Decision issued by the Office of Employment Discrimination Complaint Adjudication (OEDCA), which found that a violation of Title VII occurred at this facility.

Federal law requires that there be no discrimination against any employee or applicant because of the person's RACE, COLOR, RELIGION, SEX (including gender identity, transgender status, sexual orientation and pregnancy), NATIONAL ORIGIN, AGE, GENETIC INFORMATION, OR PHYSICAL or MENTAL DISABILITY with respect to hiring, firing, promotion, compensation, or other terms, conditions or privileges of employment. Federal law also prohibits reprisal against employees who participate in EEO proceedings or otherwise oppose unlawful discriminatory employment practices.

The Department of Veterans Affairs Syracuse VAMC supports and will comply with such Federal law and will not retaliate against individuals because they have exercised their rights under law.

The Department of Veterans Affairs Syracuse VAMC has been ordered to remedy the discrimination found in OEDCA's Final Agency Decision. The Department of Veterans Affairs Syracuse VAMC will ensure that officials responsible for personnel decisions and terms and conditions of employment will abide by the requirements of all Federal equal employment opportunity laws and will not retaliate against employees who file EEO complaints.

The Department of Veterans Affairs Syracuse VAMC will not in any manner restrain, interfere, coerce, or retaliate against any individual who opposes practices made unlawful by, or who participates in proceedings pursuant to, Federal equal employment opportunity law.

_____
Director, Syracuse VAMC

Date Posted:_____

Posting Expires:_____